## CONTRIBUTION AGREEMENT

THIS CONTRIBUTION AGREEMENT (this "Agreement") is made and entered into on this 18th day of September, 2019 (the "Effective Date"), by and among PHG-CBL LEXINGTON FAYETTE, LLC, a Georgia limited liability company (the "Company"), PEACHTREE HOTEL GROUP II, LLC, a Georgia limited liability company ("PHG II"), PHG LEXINGTON FAYETTE, LLC, a Georgia limited liability company ("PHG Investor", and together with "PHG II", "PHG"), and FAYETTE PLAZA CMBS, LLC, a Delaware limited liability company ("CBL").

## BACKGROUND STATEMENT

On August 8, 2019, the Company was formed as a Georgia limited liability company by the filing of its Articles of Organization with the Secretary of State of the State of Georgia.

On the Effective Date, the PHG II, PHG Investor and an affiliate of CBL entered into that certain First Amended and Restated Operating Agreement of PHG-CBL Lexington Fayette, LLC (the "Operating Agreement").

As of the Effective Date, CBL has agreed to contribute to the Company that certain real property located in Lexington, Kentucky, as depicted on the site plan on Schedule A attached hereto and incorporated herein by reference, and all improvements located thereon (the "Property").

Concurrently with the contribution of the Property to the Company, PHG Investors has agreed to contribute cash to the Company as set forth in Section 8.1 of the Operating Agreement, (the "PHG Investors Contribution"). Additionally, CBL's affiliate shall contribute cash to the Company as set forth in Section 8.1 of the Operating Agreement (the "CBL Contribution"). The PHG Investors Contribution and the CBL Contribution, together with proceeds of the Loan (as defined in the Operating Agreement) will be used to (i) develop the Hotel (as defined in the Operating Agreement) on the Property, and (ii) pay certain transaction costs and fund reserves.

The parties hereto now desire to enter into this Agreement to set forth the terms and conditions pursuant to which CBL will contribute the Property to the Company.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    Defined Terms.  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Operating Agreement.

2.    Contribution of the Property to Company.  Upon the terms and conditions set forth herein, CBL hereby agrees to contribute the Property to the Company free and clear of all indebtedness, liens and other title encumbrances (except the Permitted Exceptions).

3.    Representations, Warranties and Covenants of CBL.  CBL hereby represents and warrants to the Company and PHG that:

12737144 v6

1

**Exhibit B**

      a.      CBL is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware. CBL has the full power and authority to own, develop, lease, sell and operate its assets and properties and to conduct its business as now being conducted.

      b.      This Agreement constitutes the legal, valid and binding obligation of CBL, enforceable against CBL in accordance with its terms. CBL has taken or shall take prior to the Effective Date, all necessary action to authorize and approve the execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement. Subject to obtaining the consents/approvals of (i) the tenant pursuant to that certain lease agreement dated June 7, 2017 (as amended) between CBL as landlord and Specialty Retailers, Inc. (Gordman's) as tenant and (ii) the tenant pursuant to that certain lease dated June 15, 2005 among CBL as landlord and Cinemark USA, Inc. as tenant (the consents referenced in (i) and (ii) being collectively referred to herein as the "Tenant Consents"), no approvals or consents by third parties or governmental authorities are required in order for CBL to consummate the transactions contemplated hereby.

      c.      To CBL's knowledge, the execution and delivery of this Agreement and the performance by CBL of its obligations hereunder do not and will not conflict with or violate any current law of any governmental authority with jurisdiction over CBL or the Property, including, without limitation, the laws of the United States of America, the State of Kentucky, or any political subdivision of any of the foregoing, or any decision or ruling of any arbitrator to which CBL is a party or by which CBL or the Property is bound or affected.

      d.      CBL is the current fee simple title owner of the Property. CBL has the right and authority to contribute the Property to the Company as required by this Agreement without cost or agreement of any other third party.

      e.      To CBL's knowledge, neither the Property nor CBL is a party to, or is subject to or bound by, any agreement (other than those providing for the Tenant Consents), judgment, order, writ, injunction or decree of any governmental authority that would prevent the performance of all or any of the terms of this Agreement, or with respect to which the performance by CBL of its obligations under this Agreement would create a default under this Agreement.

      f.      There are no pending or, to CBL's knowledge, any threatened federal, state, county, municipal or other governmental plans or proceedings to change the highway or road system in the vicinity of the Property in a manner which would adversely affect the Property or to restrict or change access from any such highway or road to the Property or to exercise powers of condemnation or eminent domain relating to or affecting the Property.

      g.      No Person has any conditional or unconditional right and/or option to purchase the Property and/or ground lease the Property (or any portion thereof), and/or right of first refusal or offer to purchase the Property.

      h.      Neither CBL nor any of its direct or indirect members, partners, or shareholders has (i) made a general assignment for the benefit of its creditors, (ii) admitted in

12737144 v6

2

# Exhibit B

writing its inability to pay its debts as they mature, (iii) had an attachment, execution or other judicial seizure of any property interest which remains in effect, or (iv) taken, failed to take or submitted to any action indicating a general inability to meet its financial obligations as they accrue.   There is not pending any case, proceeding or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution or recomposition of any of CBL or any of its members or any of their debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking appointment of a receiver, trustee, custodian or other similar official for it or any of its members or partners, as the case may be, for all or any substantial part of its or their property.

       i.      Other than the exceptions to title to the Property listed on <u>Schedule B</u> attached hereto (the "Permitted Exceptions"), to CBL's knowledge, the Property is free of all liens and encumbrances.

       j.      To CBL's knowledge, the Property and the proposed development and operation of the Hotel thereon, are and will be, in compliance with and do not violate any applicable deed restrictions or other covenants, restrictions or agreements (including, without limitation, any of the Permitted Exceptions), other than those agreements providing for the Tenant Consents, site plan approvals, zoning or subdivision regulations or stipulations or urban redevelopment plans applicable to the Property and CBL has not received any written notice of such noncompliance or violation.  CBL has not received any written notice of any violation of any law (including, without limitation, building code, health and safety or zoning violations), issued by any governmental authority affecting the Property (collectively, "Violations").  CBL has not received any written notice that an investigation has been commenced respecting any such possible Violations.  To CBL's knowledge, the Property and the proposed development and operation of the Hotel thereon do not and will not, violate any laws, and all entitlements, permitted land uses, and development rights and obligations appurtenant to the Property and all licenses, permits, approvals and certificates issued by any governmental authorities required or used in or relating to the ownership, use, development, maintenance, occupancy or operation of any part of the Property (collectively, "Licenses and Permits") necessary for the operation of the Property as currently conducted are in full force and effect (and the issuance of such Licenses and Permits has not been challenged) and are transferable with the Property to the Company.

       k.      Except for such leases that are being terminated on or prior to the Closing Date, CBL has not entered into any leases, subleases, licenses or other rental agreements or occupancy agreements (written or verbal), which grant any possessory interest in and to any space situated on or in the Property or that otherwise give rights with regard to use of the Property, nor has CBL renewed any such agreement in existence prior to CBL's ownership of the Property and which was assumed by CBL.

       l.      As of the Effective Date, CBL has not received any written notice from any Governmental Authority of any material Environmental Claims, Environmental Liabilities or violations of any Environmental Laws with respect to the Property which have not been cured. Except as disclosed in any Environmental Reports delivered by CBL to the Company prior to the Effective Date, to CBL's knowledge, (i) no Hazardous Materials have been discharged, disbursed, released, stored, treated, generated, disposed of, or allowed to escape on the Property

12737144 v6

# Exhibit B

in violation of applicable law; and (ii) no underground storage tanks are located on the Property or were located on the Property and subsequently removed or filled.

        m.     For purposes hereof, the following definitions shall apply:

"Environmental Claims" shall mean any claim for reimbursement or remediation expense, contribution, personal injury, property damage or damage to natural resources made by any Governmental Authority or other Person arising from or in connection with the presence or release of any Hazardous Materials over, on, in or under the Property, or the violation of any Environmental Laws with respect to the Property.

"Environmental Laws" means any applicable laws which regulate or control (i) Hazardous Materials, pollution, contamination, noise, radiation, water, soil, sediment, air or other environmental media, or (ii) an actual or potential spill, leak, emission, discharge, release or disposal of any Hazardous Materials or other materials, substances or waste into water, soil, sediment, air or any other environmental media, including, without limitation, (A) the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"), (B) the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. ("RCRA"), (C) the Federal Water Pollution Control Act, 33 U.S.C. § 2601 et seq., (D) the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq., (E) the Clean Water Act, 33 U.S.C. § 1251 et seq., (F) the Clean Air Act, 42 U.S.C. § 7401 et seq., (G) the Hazardous Materials Transportation Act, 49 U.S.C. § 5101 et seq., and (H) the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq. and similar state and local Applicable Law, as amended from time to time, and all regulations, rules and guidance issued pursuant thereto.

"Environmental Liabilities" means any liabilities or obligations of any kind or nature imposed on the Person in question pursuant to any Environmental Laws, including, without limitation, any (i) obligations to manage, control, contain, remove, remedy, respond to, clean up or abate any actual or potential release of Hazardous Materials or other pollution or contamination of any water, soil, sediment, air or other environmental media, whether or not located on the Property and whether or not arising from the operations or activities with respect to the Property, and (ii) liabilities or obligations with respect to the manufacture, generation, formulation, processing, use, treatment, handling, storage, disposal, distribution or transportation of any Hazardous Materials.

"Governmental Authority" shall mean any federal, state, local or foreign government or other political subdivision thereof, including, without limitation, any agency, court or entity exercising executive, legislative, judicial, regulatory or administrative governmental powers or functions, in each case to the extent the same has jurisdiction over the Person or property in question.

"Hazardous Materials" means (A) those substances included within the definitions of any one or more of the terms "hazardous substances," "toxic pollutants", "hazardous materials", "toxic substances", and "hazardous waste" in the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. (as amended), the Hazardous Materials Transportation Act, as amended, 49 U.S.C. Sections 1801 et seq., the Resource Conservation and Recovery Act of 1976 as amended, 42 U.S.C. Section 6901 et seq., Section 311 of the Clean Water Act, 15 U.S.C. § 2601 et seq., 33 U.S.C. § 1251 et seq., 42 U.S.C. 7401 et seq., and the regulations and publications issued under any such laws, (B) petroleum, radon gas, lead based

# Exhibit B

paint, asbestos or asbestos containing material and polychlorinated biphenyls and (C) mold or water conditions which may exist at the Property or other substances, wastes or materials listed or defined by any state or local statutes, regulations and ordinances pertaining to the protection of human health and the environment.

n.    Schedule C annexed hereto and made a part hereof sets forth a correct and complete list of all of the all service, maintenance, supply, management and other similar contracts or agreements with respect to the ownership or operation of the Property, and all amendments, modifications and supplements with respect thereto (collectively, the "Service Contracts") to which the Property is subject or bound, and any written leases, and any amendments thereto, of personal property located at, or used in the operation of, the Property (collectively, the "Equipment Leases"). Except as expressly set forth in Schedule C, all Service Contracts are terminable on thirty (30) days' notice or less without the payment of any premium or termination fee. To the best knowledge of CBL, no party is in default under any of the Service Contracts or Equipment Leases. CBL has delivered to PHG true, correct and complete copies of the Service Contracts and Equipment Leases. None of the Service Contracts or Equipment Leases are between CBL and any affiliate of CBL.

o.    There are no employees of CBL, at the Property or otherwise, who, by reason of any federal, state, county, municipal or other law, or by reason of any union or other employment contract or agreement (written or oral), or any other reason whatsoever, would become employees of PHG or the Company as a result of the transactions contemplated by this Agreement.

p.    There are no outstanding invoices, bills or other evidence of obligations with respect to any site work or construction at the Property, that are past due or delinquent.

q.    There is no pending litigation against CBL or the Property nor does CBL have any written notice of any threatened litigation or claim which would rise to the level of litigation.

r.    CBL does not know of any facts or circumstances not disclosed or otherwise known to PHG which otherwise should be disclosed to PHG Investors in order to make any of the representations or warranties made herein on the part of CBL not misleading in any material respect.

s.    Neither CBL, nor any member, partner or shareholder thereof, as the case may be, nor any Person with actual authority to direct the actions of any member or partner of CBL, nor, to CBL's knowledge, any other Persons holding any legal or beneficial interest whatsoever in CBL, (i) are named on any list of Persons and governments issued by the Office of Foreign Assets Control of the United States Department of the Treasury ("OFAC") pursuant to Executive Order 13224 – Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, as in effect on the date hereof, or any similar list or publicly issued by OFAC or any other department or agency of the United States of America (collectively, the "OFAC Lists"), (ii) are included in, owned by, controlled by, knowingly acting for or on behalf of, knowingly providing assistance, support, sponsorship, or services of any kind to, or otherwise knowingly associated with any of the Persons referred to or

12737144 v6

5

# Exhibit B

described in the OFAC Lists, or (iii) has knowingly conducted business with or knowingly engaged in any transaction with any Person named on any of the OFAC Lists or any Person included in, owned by, controlled by, acting for or on behalf of, providing assistance, support, sponsorship, or services of any kind to, or, to CBL' knowledge, otherwise associated with any of the Persons referred to or described in the OFAC Lists.

        t.     CBL has duly filed all state and local tax reports and returns required to be filed by it, including all state and local sales, or use tax returns or reports pertaining to the Property and the business being conducted by CBL thereon, and CBL has duly paid in full all taxes assessed against it by state or local taxing authorities; CBL has received no notice that additional taxes are due, and, to CBL's actual knowledge, there are no state or local liens for taxes upon any property or assets of CBL.  To CBL's actual knowledge, the Property is not subject to any protests or appeal proceedings related to real property tax assessments.

        All of CBL's representations and warranties contained herein or in any instrument or other document delivered pursuant to this Agreement or in connection with the transactions contemplated hereby shall survive the Effective Date for a period of one (1) year.  As used in this Agreement, the words "CBL's knowledge" or words of similar import shall be deemed to mean, and shall be limited to, the actual (as distinguished from implied, imputed or constructive) knowledge of Justice Wade, Vice President – FB&E/Development Leasing of CBL's affiliate, and Myron Worley, general manager of Fayette Mall, Lexington, Tennessee and an employee of CBL's affiliate.

        <u>PROPERTY TRANSFERRED "AS IS"</u>.  EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT, COMPANY ACKNOWLEDGES AND AGREES THAT IT IS ACQUIRING THE PROPERTY IN ITS "AS-IS" CONDITION AND "WITH ALL FAULTS" BASIS, AS OF THE CLOSING OF THE ACQUISITION. COMPANY IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, FROM CBL, ANY CBL RELATED PARTIES, OR THEIR AGENTS OR BROKERS, OR ANY OTHER PERSON ACTING OR PURPORTING TO ACT ON BEHALF OF CBL, AS TO ANY MATTERS CONCERNING THE PROPERTY.  THIS SECTION SHALL SURVIVE CLOSING OF THE ACQUISITION OF THE PROPERTY BY THE COMPANY.

        4.    <u>Closing</u>.  The "<u>Closing</u>" shall be held on or prior to the date that is ninety (90) days following the date of this Agreement, or such other date as the parties hereto may mutually agree (the "<u>Closing Date</u>").  The Closing shall be held at such time and place as may be agreed upon by the parties in writing.

        5.    <u>Deliveries to be made on the Closing Date</u>.  At Closing, CBL shall deliver or cause to be delivered to the Company the following documents:

        a.    <u>Deed</u>.  A special warranty deed in the form attached hereto as <u>Schedule D</u> (the "<u>Deed</u>"), duly executed and acknowledged by CBL, which conveys the Property to the Company, subject only to Permitted Exceptions.

# Exhibit B

b.    <u>Bill of Sale.</u>  A bill of sale in the form attached hereto as <u>Schedule E</u>, as executed by CBL.

c.    <u>Assignment and Assumption Agreement.</u>  An assignment and assumption agreement in the form attached as <u>Schedule F</u>, as executed by CBL.

d.    <u>Affidavits.</u>    Duly executed and sworn affidavits, declarations and indemnifications respecting the existence of mechanic's or materialmen's liens, parties in possession and other third party rights relating to matters of title, as reasonably required by the title company selected by the Company to insure its interest in the Property (the "<u>Title Company</u>") to issue an ALTA owner's policy of title insurance insuring the title of the Company.

e.    <u>FIRPTA Affidavit.</u>    The affidavit referred to in Section 1445 of the Internal Revenue Code of 1986, as amended, with all pertinent information confirming that CBL is not a foreign person, trust, estate, corporation to partnership, the form of which is attached hereto as <u>Schedule G</u>.

f.    <u>Authority.</u>  Such proof and evidence of CBL's authority and authorization to enter into the transaction contemplated hereby, and such proof of the power and authority of the individual(s) executing and/or delivering any instruments, documents or certificates on behalf of any entity to act for and bind such entity, as may be reasonably required by the Title Company (as defined below) and/or PHG Investors, including, without limitation, any and all consents of any members, directors, partners, limited partners or other persons whose consent to the transactions contemplated hereby is required in accordance with CBL's respective internal organizational structures.

g.    <u>Title Policy.</u>  An ALTA owner's title policy issued by the Title Company insuring good and indefeasible title of the Company to the Property in the amount of Twenty Million Seven Hundred Fifty Thousand and 00/100 Dollars ($20,750,000.00), without exceptions or reservations of any kind, including, without limitation, the standard preprinted exceptions to the title policy or any liens or reservation of lien rights in favor of the contractors, mechanic's or materialmen, except the Permitted Exceptions and together with such endorsements, including but not limited to, a non-imputation endorsement (the "<u>Non-Imputation Endorsement</u>"), and reinsurance agreements as PHG Investors may reasonably require.

h.    <u>Non-Imputation Affidavit and Indemnity.</u>  Such affidavits and indemnities as the Title Company may reasonably require to issue the Non-Imputation Endorsement as required above.

i.    <u>Tax Documents.</u>  Such declarations, affidavits, and other documentation as may be reasonably required by the Title Company or which are customary or required by law in the jurisdiction where the Property is located with respect to state-specific withholding tax, transfer taxes, documentary stamp taxes or other similar matters.

j.    <u>Property Documents.</u>  To the extent in the possession or reasonable control of CBL (and in all cases to be made available at the Property, originals (or copies to the extent originals are not available) of all certificates of occupancy, warranties, guaranties, governmental permits, approvals and licenses, plans and specifications, development approvals, architectural

12737144 v6

7

**Exhibit B**

drawings and renderings, and other items prepared by CBL or third parties contracted by CBL, issued for or with respect to the Property (to be made available at the Property), together with all written consents from third parties required to transfer the foregoing to the Company.

k.    Other Documents and Deliveries. Such other documents, title affidavits, instruments and deliveries customarily delivered in transactions similar in nature and scope to those contemplated by this Agreement which are reasonably requested by the Title Company or PHG Investors or PHG II in writing.

6.    Rights and Remedies. The parties hereto confirm that damages at law may be an inadequate remedy for breach or threat of breach of any provisions hereof (including without limitation failure of CBL to contribute the Property to the Company in accordance with this Agreement). The respective rights and obligations hereunder (including without limitation CBL's obligation to contribute the Property to the Company) shall be enforceable by specific performance, injunction, or other equitable remedy, but nothing herein contained is intended to limit or affect any rights at law or by statute or otherwise of any party aggrieved as against the other parties for a breach or threat of breach of any provision hereof, it being the intention that the respective rights and obligations of the parties hereto shall be enforceable in equity as well as at law or otherwise. The rights and remedies of any of the parties hereunder shall not be mutually exclusive, and the exercise of one or more of the provisions hereof shall not preclude the exercise of any other provisions hereof. Notwithstanding the foregoing if CBL engages in an intentional default hereunder that renders specific performance unavailable, PHG shall have all rights and remedies at law or in equity, including, without limitation, the right to sue CBL for damages.

7.    Indemnification.

a.    Indemnification by CBL. CBL agrees to defend, indemnify and hold the Company and PHG and any disclosed or undisclosed partner, affiliate, successor, assign, investment adviser, trustee, principal, officer, director, shareholder, agent, manager, fiduciary or employee of the Company or PHG (collectively, the "Venture Parties") harmless from all damages, liabilities, costs and expenses (including reasonable attorneys' fees and other litigation expenses) arising from (a) any and all claims, demands, causes of action, losses, damages, liabilities, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) (collectively, "Claims") which they may sustain at any time by reason of the breach or material inaccuracy of (i) any of the representations, warranties and/or covenants of CBL contained in Section 3 of this Agreement, and (ii) any other representation or warranty of CBL contained in this Agreement; (b) accounts payable and other claims relating to the Property, including, without limitation employee claims, provided such accounts payable and other claims were incurred prior to the Closing Date and during CBL's period of ownership of the Property; (c) claims by tenants and/or occupants of the Property arising with respect to the Property, which accrued prior to the Closing Date and during CBL's period of ownership of the Property; and (d) any claims for bodily injury, personal injury or property damage accruing prior to the Closing Date and during CBL's period of ownership of the Property.

b.    Indemnification by the Company. Company agrees to defend, indemnify and hold CBL and CBL Member, as defined below, harmless from all damages, liabilities, costs

12737144 v6

# Exhibit B

and expenses (including reasonable attorneys' fees and other litigation expenses) arising from: (a) accounts payable and other claims relating to the Property, which are incurred from and after the Closing Date; (b) claims by tenants and/or occupants of the Property arising with respect to the Property, which accrue from and after the Closing Date; and (c) any claim for bodily injury, personal injury or property damage accruing from and after the Closing Date.

          c.    The provisions of this <u>Section 7</u> shall survive the Effective Date for the period expiring on the expiration of the applicable statute of limitations on the claims or matters for which indemnities are being provided.

8.    <u>Waiver</u>.  The obligations of the parties hereunder and the conditions to their performance may not be waived except in a written document signed by the parties hereto.

9.    <u>Binding Effect</u>.  This Agreement shall be binding upon the parties, their successors and assigns.

10.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, all of which together shall constitute a single contract, and each of such counterparts shall for all purposes be deemed to be an original.  This Agreement may be executed and delivered by electronic mail; any original signatures that are initially delivered by electronic mail shall be physically delivered with reasonable promptness thereafter.  This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as the signatories.

11.    <u>References to Schedules and Exhibits</u>.  All schedules and exhibits referred to herein and attached hereto are hereby incorporated by reference.

12.    <u>Application of Georgia Law</u>.  Except with respect to those documents related to the conveyance of the Property which are governed by Kentucky law, the parties hereto acknowledge and agree that this Agreement and the application of interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of Georgia.

13.    <u>Notices</u>.  Notices shall be governed by the provisions of <u>Section 15.13</u> of the Operating Agreement.

14.    <u>Successors and Assigns</u>.  Each of all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Agreement, their respective heirs, legal representatives, successors and assigns.

15.    <u>Entire Agreement</u>.  This Agreement, together with the other writings signed by the parties and incorporated herein by reference and together with any instruments to be executed and delivered under this Agreement, and, along with the Operating Agreement, constitutes the entire agreement between the parties with respect to the Property and supersedes all prior oral and written understandings.  Any amendments to this Agreement shall not be effective unless in writing and signed by the parties hereto.

12737144 v6

**Exhibit B**

16.    <u>Attorneys' Fees</u>.  If either party hereto fails to materially perform any of its obligations under this Agreement or if any dispute arises between the parties hereto concerning the meaning or interpretation of any provision of this Agreement, then the defaulting party or the party not prevailing in such dispute, as the case may be, shall pay any and all reasonable costs and expenses incurred by the other party on account of such default and/or in enforcing or establishing its rights hereunder, including, without limitation, court costs and reasonable attorneys' fees and disbursements.  Any such attorneys' fees and other expenses incurred by either party in enforcing a judgment in its favor under this Agreement shall be recoverable separately from and in addition to any other amount included in such judgment, and such attorneys' fees obligation is intended to be severable from the other provisions of this Agreement and to survive and not be merged into any such judgment.

17.    <u>Contribution/Direct Deeding</u>.  The parties acknowledge that the manner in which CBL will contribute the Property to the Company pursuant to the terms of this Agreement is as follows:

Currently, the Property is owned by CBL (Fayette Plaza CMBS, LLC, a single member LLC owned by CBL & Associates Limited Partnership, a Delaware limited partnership).

- Fayette Plaza CMBS, LLC will distribute the Property to its sole member, CBL & Associates Limited Partnership.
- CBL & Associates Limited Partnership will contribute the Property to a newly formed limited liability company (CBL Fayette Hotel Member, LLC) ("<u>CBL Member</u>") wholly owned by CBL & Associates Limited Partnership.
- CBL Fayette Hotel Member, LLC will contribute the Property to the Company.

The parties acknowledge that in order to simplify the transaction for transfer tax purposes and deed preparation and closing costs, the Property shall be deeded directly to the Company by Fayette Plaza CMBS, LLC but the records of the Company and CBL affiliated entities will reflect the distributions and contributions referenced herein.

CBL and CBL Member shall be jointly and severally liable for all obligations of CBL set forth herein.

*[SIGNATURES BEGIN ON FOLLOWING PAGE]*

12737144 v6

# Exhibit B

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

<u>COMPANY</u>:

**PHG-CBL LEXINGTON FAYETTE, LLC,**
a Georgia limited liability company

By:     Peachtree Hotel Group II, LLC, a Georgia
limited liability company, its Manager

By: _____
Jatin Desai, Manager

<u>PHG INVESTORS</u>:

**PHG LEXINGTON FAYETTE, LLC**, a Georgia
limited liability company

By:     Peachtree Hotel Group II, LLC, a Georgia
limited liability company, its Manager

By: _____
Jatin Desai, Manager

<u>PHG II</u>:

**PEACHTREE HOTEL GROUP II, LLC**, a
Georgia limited liability company

By: _____
Jatin Desai, Manager

[Signatures continue on following page]

12737144 v5

# Exhibit B

**CBL:**

**FAYETTE PLAZA CMBS, LLC**, a Delaware
limited liability company

By:  CBL & Associates Limited Partnership, sole
member

By:  CBL Holdings I, Inc., sole general partner

By: _____
Name: _____
Title: _____
         Jeffery V. Curry
         Chief Legal Officer

The undersigned hereby execute this Agreement solely for the purposes of evidencing their acknowledgment and agreement to the provisions of Section 17 hereof.  Executed to be effective as of the date first above written.

**CBL & Associates Limited Partnership**

By:  CBL Holdings I, Inc., sole general partner

By: _____
Name: _____
Title: _____
         Jeffery V. Curry
         Chief Legal Officer

**CBL Fayette Hotel Member, LLC**

By:  CBL & Associates Limited Partnership, sole member

By:  CBL Holdings I, Inc., sole general partner

By: _____
Name: _____
Title: _____
         Jeffery V. Curry
         Chief Legal Officer

12737144 v6

12

**Exhibit B**

## SCHEDULE A

### PROPERTY



**Exhibit B**

12737144 v6

## SCHEDULE B

### LIST OF PERMITTED EXCEPTIONS

[To be inserted post-execution after subdivision is completed]

12737144 v6

# Exhibit B

## SCHEDULE C

### LIST OF SERVICE CONTRACTS AND EQUIPMENT LEASES

NONE

12737144 v6

# Exhibit B

## SCHEDULE D

### FORM OF DEED

<u>SPECIAL WARRANTY DEED</u>

This DEED is made and entered into on _____, by and between

_____
_____
_____
_____

("Grantor")

and

_____
_____
_____
_____

*The In-care of Address for Grantee, to which Tax Bills may be sent:*

_____
_____
_____
_____

("Grantee").

### WITNESSETH

For a total consideration of _____ ($_____), the receipt and sufficiency of which are acknowledged, Grantor grants and conveys to Grantee in fee simple with covenant of Special Warranty certain real property in _____ County, Kentucky, and being more particularly described on <u>EXHIBIT A</u>, attached hereto and made a part hereof (the "Property").

Grantor covenants (a) lawful seisin of the Property, (b) full right and power to convey same, and (c) that the Property is free and clear of all liens and encumbrances, except liens for real property taxes and assessments due and payable in _____ and thereafter, which Grantee assumes and agrees to pay. This conveyance is made subject to all (i) easements, restrictions and stipulations of record, and (ii) governmental laws, ordinances and regulations affecting the Property.

For purposes of KRS 382.135, Grantor and Grantee, by execution of this Deed, certify that the consideration reflected in this Deed is the full consideration paid for the Property.

## Exhibit B

IN WITNESS WHEREOF, Grantor and Grantee, acting by and through its authorized representative, executed this Deed as of the date first set forth above.

<u>GRANTOR</u>:

_____,

a _____

By_____

Title:_____

STATE OF _____          )
                                              ) SS
COUNTY OF _____         )

The foregoing Deed, including the consideration certificate contained therein, was sworn to and acknowledged before me on _____ by _____ as _____ of _____, on behalf of the _____.

_____
Notary Public

My Commission Expires: _____

(SEAL)

12737144 v6

# Exhibit B

GRANTEE:

_____,

a _____

By_____

Title:_____

STATE OF _____     )
                                 ) SS
COUNTY OF _____        )

    The foregoing consideration certificate was sworn to and acknowledged before me on December _____, 2011 by _____ as _____ of_____, a _____, on behalf of the _____.

_____
Notary Public

My Commission Expires: _____

(SEAL)

THIS INSTRUMENT PREPARED BY:

_____

_____

_____

_____


_____

**Exhibit B**

EXHIBIT A

12737144 v6

# Exhibit B

## SCHEDULE E

### BILL OF SALE

THIS BILL OF SALE is made as of the ___ day of _____, 201_, from _____, a _____ ("Seller") to _____, a _____ ("Purchaser").

### RECITALS:

WHEREAS, contemporaneously with the execution and delivery of this Bill of Sale, Seller has sold and conveyed to Purchaser the real property described in **Exhibit A** attached hereto and made a part hereof and all buildings, structures and improvements located thereon by that certain Special Warranty Deed of even date herewith (all of such buildings, structures, improvements and real property collectively hereinafter referred to as the "Real Property"); and

WHEREAS, as a part of the consideration for the conveyance of the Real Property, Seller has agreed to convey to Purchaser Seller's interest in the items of personal property, if any, that are owned by Seller and located in and on and used in connection with the Real Property ("Personal Property");

NOW, THEREFORE, in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Seller does hereby sell, assign, and convey to Purchaser (without any representation or warranty whatsoever other than as set forth in Contribution Agreement (as hereinafter defined) or in this Bill of Sale) Seller's right, title and interest, if any, in and to the Personal Property. Capitalized terms used herein but not otherwise defined shall have the meanings assigned to them in that certain Contribution Agreement dated _____, 2019 by and among PHG-CBL LEXINGTON FAYETTE, LLC, a Georgia limited liability company, PEACHTREE HOTEL GROUP II, LLC, a Georgia limited liability company, PHG LEXINGTON FAYETTE, LLC, a Georgia limited liability company, and FAYETTE PLAZA CMBS, LLC, a Delaware limited liability company (as assigned or amended, the "Contribution Agreement").

TO HAVE AND TO HOLD the same unto Purchaser, its successors and assigns, forever.

This Bill of Sale shall be binding upon and shall inure to the benefit of Seller, Purchaser and their respective successors and assigns.

This Bill of Sale shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky.

*[signature page to follow]*

12737144 v6

# Exhibit B

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be duly signed as of the day and year first written above.

**SELLER:**

_____,

a _____

By:_____
Name: _____
Title:    _____

**Exhibit A**  -   Legal Description

# Exhibit B

## SCHEDULE F

### FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT OF CONTRACTS ("Assignment"), made and entered into as of this ___ day of _____, 201_, by and between _____, a _____ (collectively, "Assignor"), and _____, a _____ ("Assignee").

### W I T N E S S E T H:

That Assignor for Ten and 00/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby conveys, grants, bargains, sells, transfers, sets over, assigns, releases, delivers and confirms to Assignee, without representation, warranty or covenant (except as expressly set forth in the Contribution Agreement (as hereinafter defined) or in this Assignment), all of Assignor's right, title and interest in and to all contracts and agreements identified on **Exhibit A** attached hereto (collectively, the "Contracts").

Assignee hereby expressly assumes the obligation for the performance of any and all of the obligations of Assignor under the Contracts in respect of the period on or after the date hereof.

Capitalized terms used herein but not otherwise defined shall have the meanings assigned to them in that certain Contribution Agreement dated _____, 2019 by and among PHG-CBL LEXINGTON FAYETTE, LLC, a Georgia limited liability company, PEACHTREE HOTEL GROUP II, LLC, a Georgia limited liability company, PHG LEXINGTON FAYETTE, LLC, a Georgia limited liability company, and FAYETTE PLAZA CMBS, LLC, a Delaware limited liability company (as assigned or amended, the "Contribution Agreement").

This Assignment shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky.

**[Signature Page Follows]**

Signature Page (Assignor)
[Assignment of Contracts]

# Exhibit B

IN WITNESS WHEREOF, the parties have executed this Assignment as of the day and year first above written.

**ASSIGNOR:**

_____, a _____

By: _____
Name: _____
Title: _____

**ASSIGNEE:**

_____, a _____

By: _____
Name: _____
Title: _____

**Exhibit A** – List of Contracts

# Exhibit B

## SCHEDULE G

## FORM OF AFFIDAVIT PURSUANT TO FOREIGN INVESTMENT AND REAL PROPERTY TAX ACT

_____ ___, 2019

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person.  For U.S. tax purposes (including Section 1445), the owner of a disregarded entity (which has legal title to a U.S. real property interest under local law) will be the transferor of the property and not the disregarded entity.  To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by FAYETTE PLAZA CMBS, LLC, a Delaware limited liability company ("Transferor"), the undersigned hereby certifies the following on behalf of Transferor.

1. Transferor is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2. Transferor's U.S. employer identification number is 62-1542285;

3. Transferor's office address is 2030 Hamilton Place Boulevard, Suite 500, CBL Center, Chattanooga, TN 37421; and

4. Transferor is a disregarded entity as defined in Treasury Regulation Sec. 1.1445 2(b)(2)(iii).

A disregarded entity is defined in Sec. 1.1445-2(b)(2)(iii) as "an entity that is disregarded as an entity separate from its owner under Sec. 301.7701-3 of this chapter, a qualified REIT subsidiary as defined in Sec. 856(i), or a qualified subchapter S subsidiary under Sec. 1361(b)(3)(B).

Transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign this document on behalf of Transferor.

*[signature page to follow]*

# Exhibit B

Dated:  as of the date first hereinabove written.

**FAYETTE PLAZA CMBS, LLC**, a Delaware limited liability company

By:  CBL & Associates Limited Partnership, sole member

By:  CBL Holdings I, Inc., sole general partner

By:_____

Name:_____

Title:_____

Jeffery V. Curry

Chief Legal Officer

EXHIBIT:

Exhibit A - Legal Description

# Exhibit B

**Exhibit A to FIRPTA**
**Legal Description**

[to be inserted]

# Exhibit B