Peachtree Hotel Group II, LLC
3500 Lenox Road
Suite 625
Atlanta, GA 30326

September 18, 2019

VIA EMAIL

CBL Fayette Hotel Member, LLC
c/o CBL & Associates Management, Inc.
2030 Hamilton Place Boulevard
Suite 500, CBL Center
Chattanooga, TN 37421
Attn: Justice.Wade@cblproperties.com

Re:   Debt Placement Fee/Unwind

Mr. Wade:

Reference is made to that certain First Amended and Restated Operating Agreement (the "Operating Agreement") of PHG-CBL Lexington Fayette, LLC (the "Company"), dated as of September 18, 2019, by and among Peachtree Hotel Group II, LLC ("PHG II"), PHG Lexington Fayette, LLC ("PHG Investors", and together with PHG II, "PHG"), and CBL Fayette Hotel Member, LLC ("CBL", together with Fayette Plaza CMBS, LLC ("Contributor"), and PHG, the "Parties" and each a "Party"). All capitalized terms used in this letter agreement and not otherwise defined herein shall have the meanings given to such terms in the Operating Agreement.

**Debt Placement Fee**
As set forth in Section 5.11(c) of the Operating Agreement, the Company shall pay to PHG II or its Affiliate a debt placement fee equal to one percent (1%) of the principal amount of the Loan (and any refinancing thereof) (the "Debt Placement Fee"), which shall be paid on the date of the closing of the Loan (and such refinancing thereof, as applicable).

The parties hereby acknowledge and agree that upon payment of the Debt Placement Fee, PHG II or its affiliates shall pay to CBL an amount of such fee based on the following calculation: the Debt Placement Fee multiplied by 25% and then multiplied by CBL's Ownership Percentage in the Company.

**Unwind**
Notwithstanding anything in the Operating Agreement, the Contribution Agreement or in this letter agreement to the contrary, the Members acknowledge and agree that as of the date of this letter agreement, the Property is owned by Contributor, an affiliate of CBL, PHG is continuing to perform diligence on the Property, and the Property shall not be contributed to the Company pursuant to the Contribution Agreement (the "Contribution") until PHG completes its diligence review and the Company is ready to close debt financing on such terms as are approved by both Members. In the event that PHG provides written notice to CBL that (i) there are (A) geotechnical issues with, on or related to the Property, (B) title and/or survey issues with respect to the Property, and/or (C) environmental issues with, on or related to the Property that (singularly or in the aggregate as to (A), (B) and (C)) will prohibit the development of the Hotel on the Property within the confines of the Approved Development Budget (a "Diligence Prohibition"), (ii) PHG has obtained a Loan, or a term sheet or commitment for a Loan, within

12751816 v15

**Exhibit C**

twelve months following the date hereof, to construct the Hotel per the terms of the Operating Agreement, and CBL has failed or refused to provide any required approval of such Loan per the terms of the Operating Agreement (a "Financing Failure"), or (iii) the Property fails to receive appropriate zoning or entitlements necessary for the development of the Hotel within the confines of the Approved Development Budget (an "Entitlement Failure"), then (x) the Operating Agreement, the Contribution Agreement and this letter agreement will be void and of no force or effect, without any further action of any Person, (y) the Property will remain owned by Contributor and PHG shall not have any interest therein, and (z) subject to the provisions of this letter agreement, each Party will bear its own costs in connection with the transactions contemplated hereby, including negotiation of any transaction documents (including, without limitation, the Operating Agreement, the Contribution Agreement, and this letter agreement), diligence of the Property, or any other costs incurred by such Party in connection with the transactions contemplated hereby. Upon such termination, PHG shall assign and deliver to CBL the due diligence materials prepared or caused to be prepared by PHG with respect to the Property and the Hotel (including but not limited to any plans and specifications, engineering drawings, permits, development/operational rights for which fees have been paid, i.e., tap fees, utility fees, permit fees) and PHG shall, if assignable, assign to CBL or CBL's designee any franchise agreement that PHG has entered into with respect to the Hotel, and CBL shall reimburse PHG for all costs incurred by PHG or its affiliates in connection with such materials so assigned other than legal fees incurred or paid by PHG and its affiliates in preparing and negotiating this letter agreement, the Operating Agreement, the Contribution Agreement and the initial term sheet dated February 4, 2019, and in the formation of any PHG entities.

The Parties further acknowledge and agree that notwithstanding Section 8.1(a) of the Operating Agreement, if the terms of the Loan approved by both Members assign a value to the Property in an amount different than $1,600,000.00, the Manager shall update Section 8.1(a) of the Operating Agreement to reflect the Lender-approved value of the Property. CBL shall continue to have the right to contribute cash in an amount that, when such amount is added with the Lender-approved value of the Property, will not exceed forty-nine percent (49%) of the total Initial Capital Contributions made by all Members.

The parties further acknowledge and agree that the Property currently has two tenants that will need to be relocated in order to construct the Hotel (the "Relocation"); accordingly, if the Company does not acquire the Property on or prior to the date that is twelve (12) months following the date of this letter agreement (the "Outside Closing Date"), other than as a result of (i) a Diligence Prohibition, (ii) a Financing Failure, (iii) an Entitlement Failure, or (iv) CBL's breach of this letter agreement, the Operating Agreement, or the Contribution Agreement, then PHG will reimburse CBL for all costs actually incurred by CBL and its affiliates in connection with the Relocation up to a total amount equal to (x) $1,400,000.00 less (y) out of pocket costs actually incurred by PHG and its affiliates in connection with the transactions contemplated hereby other than legal fees incurred or paid by PHG and its affiliates in preparing and negotiating this letter agreement, the Operating Agreement, the Contribution Agreement and the initial term sheet dated February 4, 2019, and in the formation of any PHG entities (the "Reimbursement Amount").

Notwithstanding anything herein to the contrary but subject to the terms of this paragraph, if PHG has paid to CBL the Reimbursement Amount, CBL shall reimburse and pay to PHG an amount equivalent to the Reimbursement Amount so paid by PHG to CBL: (1) if the Company acquires the Property after the Outside Closing Date, or (2) if CBL has proceeded, directly or indirectly, with the development of a hotel on the Property without PHG for any reason, or enters into a binding agreement to do so (each of the foregoing clause (1) and (2) being a "Repayment Event"). If a Repayment Event has not occurred on or prior to the date that is five (5) years following the date of this letter agreement, then the provisions of this paragraph shall become null and void. If a Repayment Event occurs pursuant to clause (1) of this paragraph within the aforestated time frame, payment by CBL to PHG will be made upon acquisition of the Property by the Company. If a Repayment Event occurs pursuant to clause (2) of this paragraph

## Exhibit C

within the aforestated time frame, payment by CBL to PHG will be made upon issuance of a certificate of occupancy for such hotel developed on the Property.

Further, if the Company does not acquire the Property as a result of CBL's breach of this letter agreement, the Operating Agreement, or the Contribution Agreement, CBL will reimburse PHG for all costs actually incurred by PHG and its affiliates in connection with the transactions contemplated hereby.

Except as specifically modified by this letter agreement, the Operating Agreement shall remain in full force and effect. This letter agreement may be executed in counterparts, each of which shall be deemed an original but all of which, when taken together, shall constitute one and the same agreement. To facilitate execution of this letter agreement, the parties may exchange counterparts of the signature page by facsimile or electronic mail (e-mail), including, but not limited to, as an attachment in portable document format (PDF), which shall be effective as original signature pages for all purposes.

[Signatures on following page]

12751816 v15

**Exhibit C**

Please provide your agreement to the foregoing terms by your signature below.

Sincerely,

**Peachtree Hotel Group II, LLC,**
a Georgia limited liability company

By: _____
Kevin Cadin, Authorized Signatory

Acknowledged and Agreed as of the date first set forth above:

**PHG Lexington Fayette, LLC,**
a Georgia limited liability company

By:   Peachtree Hotel Group II, LLC, its manager

By: _____
Kevin Cadin, Authorized Signatory

**Fayette Plaza CMBS, LLC,**
a Delaware limited liability company

By:  CBL & Associates Limited Partnership, sole member

By:  CBL Holdings I, Inc., sole general partner

By: _____
Name: Jeffery V. Curry
Title: Chief Legal Officer

**CBL Fayette Hotel Member, LLC,**
a Kentucky limited liability company

By: CBL & Associates Limited Partnership, sole member

By: CBL Holdings I, Inc., sole general partner

By: _____
Name:
Title: Jeffery V. Curry
Chief Legal Officer

*Signature Page to Letter Agreement*
*(Fayette Plaza Lexington - Debt Placement Fee / Unwind)*

**Exhibit C**